ELALFREL COMPANY, a corporation of the State of Delaware, as Trustees under a certain Agreement of Trust, dated June 29, 1923,

*vs.*

JAMES QUINN DU PONT, BIDERMAN T. DU PONT, ROSINA DU PONT, ELLEN COLEMAN DU PONT, DORA PRITCHARD DU PONT, WILLIAM BAYARD DU PONT AND EVAN M. DU PONT.

*New Castle, Jan. 22, 1932.*

*Robert H. Richards,* for complainant.

*Charles F. Richards,* for Evan M. du Pont.

*Caleb S. Layton,* for remaining defendants.

THE CHANCELLOR: The power of the complainant as succeeding trustee to do all that the original trustees could do and to exercise the absolute discretion which the trust settlement conferred on the original trustees, is not called in question. The agreement creating the trust is so clear on that point that no debate has arisen concerning it.

The only question before the court is whether the trustee has the power to terminate the trust and pay over at once to the now living children of Evan M. du Pont, the one-tenth part distributable to the "lawful issue of Evan M. du Pont," or whether the trustee must defer the distribution until the death of Evan M. du Pont, or until November 11, 1940, that date being ten years from the date of the death of the settlor, whichever time should first arrive.

The settlor's brother, Evan M., was living when the trust was created. He is living now, when the trustee has deemed it wise to make distribution. The gift to his lawful issue was and is, therefore, a gift to the issue of a living person. If there be a present gift to the heirs of a living person, notwithstanding the maxim *nemo est haeres viventis,* it will nevertheless take effect. In such case the authorities hold that the word "heirs" is to be understood as not used in its technical sense, but as descriptive of the person or persons to take, e. g. the heir apparent, or the children or issue, of the living person. Generally speaking, a gift to the heirs of A., a living person, designates those persons who would be A.'s heirs if he were dead at the time of the gift. *Conklin v. Conklin,* 3 *Sandf. Ch.* 67; *Campbell v. Rawdon,* 18 *N. Y.* 417; *Ward v. Stow,* 2 *Dev. Eq.* (17 *N. C.*) 517; *Bailey v. Patterson,* 3 *Rich. Eq.* 158; *Williamson v. Williamson,* 18 *B. Mon.* 370; *Shepherd v. Nabors,* 6 *Ala.* 636; *Scott's Estate,* 163 *Pa.* 165, 29 *A.* 877.

In the instant case we are not confronted with the word "heirs," with its strong connotation of death of an ancestor. Here we have the words "lawful issue" which certainly contain no such strong connotation of death of another as does "heirs." In *Hillen v. Iselin, et al.,* 144 *N. Y.* 374, 39 *N. E.* 368, 371, it was observed that whereas the word "descendant," by reason of its correlative "ancestor," may not be descriptive of the issue of a living parent, yet "the word 'issue' is a word of broader import, and may include the children of a living parent as well as the children or descendants of one who is dead." The children of Evan M.

du Pont are his issue during his lifetime as much so as after his death.

It follows not alone from the ordinary import of the words used but as well from the adjudicated cases, that for the ascertainment of the issue of Evan M. du Pont it is not inherently necessary to abide the event of his death. The suggestion, therefore, that the lawful issue of Evan M. du Pont cannot in any case be ascertained until his decease, is not sustainable. It is to be observed that the solicitor appearing for Evan M. du Pont concedes that if Mr. du Pont should survive until November 11, 1940, the date marking the end of the ten year period, his lawful issue would then have to be ascertained notwithstanding the fact that their ancestor would be living. Now if the connotation of the words "lawful issue" as used in the trust agreement necessitates the inference that there can be no present distribution of the one-tenth share because Evan M. du Pont is living, his continuance in life until November 11, 1940, would likewise prevent the possibility of immediate distribution at that time. Yet it cannot be doubted that under the agreement the distribution to the lawful issue of Evan M. du Pont cannot be postponed later than November 11, 1940. This is conceded. It necessarily follows then that where the settlor used the words "lawful issue" it was not intended that the ascertainment of the issue should await the death of Evan M. du Pont.

The trustee is not required to defer distribution until the ten year period expires. The settlor expressly provided in the agreement that at such time within the ten year period as the trustees might in their absolute discretion deem it wise so to do, they should divide and pay over the then corpus of the trust. It is true that such discretion put it in the power of the trustees or their successor in office, by deciding upon a distribution at a given time, to close the class embraced in the elastic phrase "lawful issue." Thus issue born after the distribution would be excluded. But if the settlor chose to vest a discretion in his trustees

which, by the mere time of its exercise, might thus determine the composition of the class embraced in the descriptive phrase "lawful issue," I know of no impediment which the law would place in the way of his purpose. See *Will of Dalrymple,* 173 *Wis.* 464, 180 *N. W.* 829, 181 *N. W.* 821. It is not unusual for wills and trusts to adopt an arbitrary date as the time when an indefinite class shall be ascertained. The settlor did that in this case by providing that in any event distribution should be made at the end of the ten year period following his death. There is no reason in law why he could not have provided for an acceleration of the time of ascertainment of the class by conferring upon the trustees or their successor a discretion to that effect, as he did.

The conclusion then is, that the complainant as succeeding trustee is empowered by the trust agreement to distribute the one-tenth part to the children of Evan M. du Pont, they being all his lawful issue. There can be no question but that they are all of his lawful issue entitled to the one-tenth part, for, whenever we take the time of ascertainment, whether now or at the testator's death, or at the time the trust agreement was executed, the result is the same. The phrase "then living" would seem to indicate the time of distribution as the date of ascertainment. But this, it is unnecessary to decide. Neither is there any occasion to determine whether or not a child of a living child of Evan M. du Pont would be entitled to participate as one of his issue—a question upon which the following cases bear, cited on the complainant's brief. *In re Farmers' Loan and Trust Co.,* 193 *App. Div.* 80, 183 *N. Y. S.* 339; *Duncan v. Clark, et al.,* 106 *S. C.* 17, 90 *S. E.* 180. The expression *"per stirpes* and not *per capita"* would have some interpretive value upon that question if it were here involved. *Vale Royal, etc., v. Santee, etc.,* 84 *S. C.* 81, 65 *S. E.* 955.

Decree in accordance with the foregoing.